SIMPLEX CONCRETE PILING CO. et al. v. MacARTHUR CONCRETE
PILE & FOUNDATION CO.

(District Court, D. Delaware. July 14, 1915.)

No. 317.

PATENTS ⊂⊃328—VALIDITY AND INFRINGEMENT—REMOVABLE PILES FOR FORM-
ING CONCRETE PILING.

The Shuman patents, No. 733,288, for removable piles for forming con-
crete piling, claims 5 and 9, and No. 739,268, for process of making con-
crete piles, claims 1, 3, 9, and 10, all of which relate to temporary re-
movable piles having a driving point and an outer casing through which
the pile is withdrawn and which remains either temporarily or perma-
nently as a coffer-dam, construed, and held valid, and, unlike other
claims, not confined to piles having the point greater in diameter than
the casing so that it must be detached before the pile can be withdrawn.
As so construed, said claims held infringed.

In Equity. Suit by the Simplex Concrete Piling Company and the
Simplex Foundation Company against the MacArthur Concrete Pile
& Foundation Company. On final hearing. Decree for complainants.

Charles Howson, of Philadelphia, Pa., and Hubert Howson, of
New York City, for complainants.

Melville Church, of Washington, D. C., for defendant.

BRADFORD, District Judge. This suit has been brought by The
Simplex Concrete Piling Company and the Simplex Foundation Com-
pany against the MacArthur Concrete Pile & Foundation Company
for alleged infringement of letters patent of the United States No.
733,288, granted July 7, 1903, to Frank Shuman, for improvements
in removable piles for forming concrete piling, and of letters patent
No. 739,268, granted September 15, 1903, to the same patentee for
improvements in processes of making concrete piles. The complain-
ants are the present owner and the licensee respectively of the two
patents in suit, and no question is raised as to their title to maintain
this suit. It appears that the subject-matter of both patents was dis-
closed in the original application, serial No. 138,921 of January 13,
1903; but in that year during the pendency of the proceedings, in
conformity to the rule of the patent office that "claims for a machine
and the process in the performance of which the machine is used,
must be presented in separate applications," such applications were
filed on which the two patents respectively were granted. In the de-
scription of patent No. 733,288 Shuman says:

"My invention relates to that method of forming piles of concrete or ce-
ment which consists in first driving a pile into the ground, then withdrawing
said pile, and then filling the opening formed thereby with concrete or ce-
ment in plastic or fluid form, which when it sets forms the permanent pile.
One object of my invention is to provide for driving or withdrawing the re-
movable pile with the exercise of much less power than is required when
piles of this class as heretofore constructed are used, a further object being
to render said removable pile available for under-water work or for use in
unstable ground, another object being to so construct the pile that it will con-

sist of but few parts, all of which can be easily made so strong as to effectual-ly resist the shocks or strains to which they are subjected in use, and a still further object being to provide at the bottom of the opening formed by the removable pile a base for the permanent cement or concrete pile. * * * For the purpose of forming in the ground openings for the reception of con-crete or cement to constitute permanent piling the use of an ordinary wooden or metal preparatory pile of cylindrical form or tapering inwardly from top to bottom is objectionable for the reason that the frictional hold of the earth upon the sides of the pile is such that the pile cannot be driven beyond a limited distance without the exercise of destructive force and cannot be withdrawn after being driven without the exercise of still greater force, the frictional hold of the earth upon the pile being now assisted by atmospheric pressure, owing to the fact that the withdrawal of the pile tends to create a partial vacuum in the opening left thereby. For this reason various forms of collapsible piles have been proposed; but such piles, owing to their section-al character are necessarily limited in strength and, moreover, do not over-come the objection of resistance due to the frictional hold of the earth there-upon while they are being driven. When the pile tapers inwardly from top to bottom, there is the same resistance to the driving of the pile, and the resist-ance to the withdrawal of the pile is also excessive, because, owing to the atmospheric pressure the earth is caused to firmly cling to the pile, so as to increase the difficulty of starting the same. Hence its movement is retarded for some time after it is started. In carrying out my invention, therefore, I provide the pile with an enlarged point, so as to displace the earth laterally at and near the point of the pile to a greater extent than the diameter of said pile, thereby freeing the pile, except as to a limited area at and near the point, from frictional contact with the walls of the opening formed there-by, thus facilitating the driving of the pile and practically removing any limit in the depth to which the pile can be driven. To facilitate the withdrawal of the pile, I make this enlarged point detachable therefrom. Hence the with-drawal of said pile can be effected without frictional contact of the walls of the opening to any material extent with the sides of the pile. The point, which remains at the bottom of the opening, forms an acceptable base or foundation for the permanent pile of cement or concrete. In under-water work or when working in unstable ground I provide the prepara-tory pile with a coffer-dam for preventing access of water or silt to the opening formed by said preparatory pile in the firm ground beneath or for preventing the caving in of the walls of the opening when the latter is being formed in unstable ground. * * * If the point is attached to the pile, the casing 11 will be sufficiently large to permit of the withdrawal of said point through the same. * * * In case the ground is in the nature of quick-sand or such as to preclude the opening from retaining its shape after the pile has been pulled out the casing 11 may be of the full length of the pile and riveted or otherwise firmly fastened to the point and permitted to remain in the opening with said point when the pile is withdrawn, the casing being preferably slightly less in diameter than the greatest diameter of the point. * * * Another method of forming openings under water consists in form-ing a temporary water-tight joint between the hollow pile 1 and the detach-able point 3 and, after the latter has been driven to the proper depth, pouring the concrete into the hollow pile and withdrawing the latter, either slowly or a little at a time, the temporary water-tight joint being broken on the with-drawal of the pile, so that the concrete can escape into the opening above the point as shown in Fig. 10, the concrete gradually displacing the water in the opening from the bottom of the same to the top. The concrete is introduced into the hollow pile at such a rate as always to maintain a head of concrete at the bottom of the same. This system of filling can also be adopted in cases where the nature of the ground is unstable, so as not to sustain the shape of the opening if the pile is wholly removed before introducing the concrete, or, as shown in Fig. 11, it can be employed in cases where the long coffer-dam casing 11 is used, the concrete being filled into the latter slowly or intermittently and the coffer-dam casing being withdrawn slowly or in-termittently so as to form the pile from the bottom to the top."

The claims in this patent in suit are the fifth and the ninth, reading as follows:

"5. As a device for forming in the ground an opening for the subsequent reception of concrete or other fluid or plastic material, a removable preparatory pile having a coffer-dam detachably secured thereto in such manner that the two can be driven together and the pile can be afterwards withdrawn, leaving the coffer-dam in the opening, substantially as specified."

"9. As a device for forming in the ground an opening for the subsequent reception of concrete or other fluid or plastic material, a removable pile having an enlarged point and a casing serving as a coffer-dam, substantially as specified."

In the description of the process patent No. 739,268 nothing material to the decision of this suit is disclosed which is not in substance contained or shown in the descriptive portion of the apparatus patent No. 733,288. The claims in suit of the process patent are Nos. 1, 3, 9 and 10, reading as follows:

"1. The method of forming concrete piles, which consists in forming a preparatory pile with a coffer-dam around the same, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile, and then filling the hole with concrete and permitting the latter to set, substantially as specified."

"3. The method of forming concrete piles, which consists in forming a preparatory pile with an enlarged point and a surrounding coffer-dam, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile, and then filling the hole with concrete and permitting the latter to set, substantially as specified."

"9. The method of forming concrete piles, which consists in forming a preparatory pile with surrounding coffer-dam, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile, then filling the hole with concrete and contemporaneously withdrawing the coffer-dam as the concrete accumulates therein, and then permitting the concrete to set, substantially as specified.

"10. The method of forming concrete piles which consists in forming a preparatory pile with an enlarged point and surrounding coffer-dam, sinking the said pile and coffer-dam into position to form a hole, withdrawing the pile, then filling the hole with concrete and contemporaneously withdrawing the coffer-dam as the concrete accumulates therein, and then permitting the concrete to set, substantially as specified."

All the claims in suit under both of the patents, whether relating to apparatus or to process, have to do with a removable preparatory pile in combination with a coffer-dam. The body of the pile is cylindrical and may be hollow or solid, and is provided with an enlarged point somewhat greater in diameter than the body of the pile. The greater diameter of the point is intended and operates to minimize the frictional contact of the pile with the walls of the opening formed by the driving of it. The point of the pile is "detachable therefrom," but remains attached or is detached according to the exigency of the circumstances. While having a greater diameter than the body of the pile, the point may under the true construction of the patents have a diameter either less or greater than the interior diameter of the coffer-dam. If it is greater than such interior diameter it is of course impossible to withdraw the pile through the coffer-dam without detaching the point. If it be less than such interior diameter, the pile may be withdrawn through the coffer-dam without detachment of the point. If the point be detached from the body of the pile to per-

mit of the withdrawal of the latter, the point remains in the ground and serves as a base for the concrete pile. If the point remains attached and the preparatory pile be withdrawn through the coffer-dam, such pointed pile may thereafter be used in forming holes for concrete piling. It is true that none of the drawings of either of the two patents disclose a point of a preparatory pile less in diameter than the interior of the coffer-dam, and hence it is argued that the patent monopoly does not extend to any apparatus or process in which the pile is withdrawn through the coffer-dam without detachment of the point. But this contention cannot be sustained. In Figs. 1, 2 and 3 of the drawings of patent No. 739,268 the diameter of the pile point is shown to be greater than the diameter of the interior of the coffer-dam, and with reference to these figures the patentee says:

"Fig. 1 represents the preparatory pile, which, as shown, is in the form of a metal tube, although it may be a solid pile of wood or metal, if desired, this pile being provided at the top with a suitable driving-head 2, and at the bottom with a point 3, which in the present instance is detachable from the pile," etc.

The context as well as necessary construction require that the words "is detachable" be read "is to be detached," and not "may be detached." But while the point is to be detached "in the present instance," namely, where, as shown in Figs. 1, 2 and 3, the point is too large to pass through the coffer-dam, there is no suggestion that the point must be detached where it is small enough to pass through the coffer-dam, or the coffer-dam is large enough to allow it to pass through it. The use of the words "in the present instance" negatives the idea that the point of the pile is to be detached where the pile is to be withdrawn with its point through the coffer-dam. In both of the patents the patentee has clearly shown his intention and understanding that the preparatory pile may be removed through the coffer-dam while the point remains attached to the body of the pile. In the description of patent No. 733,288 he says:

"If the point is attached to the pile, the casing 11 will be sufficiently large to permit of the withdrawal of said point through the same," etc.

And in the description of patent No. 739,268 he reiterates:

"If the point is attached to the pile, the casing 11 will be sufficiently large to permit the withdrawal of said point with the pile," etc.

There is no uncertainty in the instruction of the patents in suit on this subject. The patentee virtually says:

"Here are three figures showing a coffer-dam and a preparatory pile, with a point too large to pass through the coffer-dam. The point is therefore to be detached before withdrawing the body of the pile. But enlarge the coffer-dam shown in the figures and you may withdraw the pile with its point attached."

There was no necessity for further drawings to illustrate the plain and unmistakable teaching of the patents in this connection. Each of the several claims in suit under both patents refers to a removable pile and a coffer-dam through which the pile is to be removed or withdrawn. Every preparatory pile is provided with a point greater in

diameter than the body of the pile.  In no one of the claims in suit is it stated that the point of the pile is detachable from it.  In strong contrast with these claims are those referring to a pile and a coffer-dam, and severally stating that the point of the pile is detachable there-from; the word "detachable" in such other claims evidently having the above-mentioned signification of "to be detached."  Thus under patent No. 733,288, claim 7 refers to "a removable preparatory pile having a detachable point, a casing serving as a coffer-dam," etc., and claim 11 to "a removable pile having an enlarged point which is de-tachable from the pile, and a casing serving as a coffer-dam," etc., and under patent No. 739,268, claim 2 refers to "a preparatory pile with a detachable point and a surrounding coffer-dam," etc., claim 4 to "a preparatory pile with an enlarged and detachable point and a surrounding coffer-dam," etc., claim 11 to "a preparatory pile with detachable point and surrounding coffer-dam," etc., and claim 12 to "a preparatory pile with enlarged and detachable point and surround-ing coffer-dam," etc.  I perceive no escape from the conclusion that the claims in suit, unlike those last referred to contemplate and require that the removable pile with its point attached shall be withdrawn through the coffer-dam, in accordance with the statement in the de-scriptive portion of the two patents that if the point is attached to the pile, the casing *11* will be sufficiently large to permit of the withdrawal of said point with the pile through the casing or coffer-dam.  The claims in suit cannot be limited to the modification in apparatus and process in which the point of the pile must be detached without im-porting into those claims the word "detachable" which the patentee studiously omitted from them, and giving them a meaning similar to that of the above mentioned claims with which they have been con-trasted, in disregard of the rules applicable to the construction of pat-ent claims.  The preparatory pile mentioned in the claims in suit read in the light of the descriptive portion of the patents is a pile having a detachable point mechanically connected with it by being socketed into the end of the pile body, such point while continuing attached to the body of the pile being so rigidly connected with it as, among other things, to remain in axial alignment with it while being driven through the coffer-dam and thereafter although the pile with its point in its downward movement projects beneath the lower end of the coffer-dam, and to follow the body of the pile while being withdrawn through the coffer-dam when of sufficient diameter.

The defendant sets up by way of alleged anticipation certain prior patents and publications; but I do not find that any of the claims in suit have been anticipated.  What has been termed the British Journal or Clere Method, set forth in the Journal of the Royal Institute of British Architects in 1894, substantially differs from the claims of the patent in suit both in apparatus and process.  The apparatus there described discloses a pile body referred to as a "dolly."  The dolly is inserted in a casing or coffer-dam, the lower end of which is de-tachably connected with a point having within it a hollow or depres-sion filled or approximately filled with sand, the point with its hollow or depression being termed a "shoe."  The shoe is too large in diame-

ter to be withdrawn through the coffer-dam, and must therefore remain in the ground so long as the coffer-dam is buried therein. Further, the shoe not being mechanically and rigidly connected with the lower end of the dolly, but only detachably connected with the lower end of the coffer-dam, it is evident that, if the dolly were driven through the coffer-dam to such an extent that its lower end would project a few inches below the lower end of the coffer-dam, the shoe would be wholly detached from all connection with the coffer-dam, and there being no socketing of the lower end of the dolly into the shoe, and nothing but sand between such lower end and the shoe, it would be impossible for the shoe to remain in axial alignment or any other definite alignment with the dolly, and the apparatus would be useless so far as sinking a hole beneath the lower end of the coffer-dam is concerned. The preparatory pile of the patents in suit does not here exist. Further, this apparatus is so constructed that the dolly cannot project below the coffer-dam. The head of the dolly is of a diameter sufficient to cover the coffer-dam to its outside periphery and is only separated from the coffer-dam by a rope ring or "gummet" to lessen the shock to the coffer-dam from the blows of the "monkey" upon the head of the dolly. The dolly is driven and descends with the coffer-dam, and when the coffer-dam stops, the dolly stops with it. Not to mention any other point of difference obviously the British Journal or Clere Method cannot operate as an anticipation. The British patent of 1890 granted to G. A. French also fails to disclose the subject-matter of any of the claims in suit. The pile—which is not a preparatory pile—consists of a metal cylinder in so many sections as the depth to which it is to be driven requires; the bottom of the cylinder being firmly and permanently attached to the point of the shoe. A wooden post or pole called a "dolly" and longer than the pile or portion of the pile which is to be sunk is passed down inside the cylinder or body of the pile until its end rests on the inside of the shoe. The dolly is not in any manner fastened to the body of the pile or its shoe. The upper end of the dolly projects above the cylindrical pile so that blows given by the monkey falling on the dolly operate through it directly upon the shoe, driving it into the ground followed by the pile to which it is attached. It is stated in the patent that "when driven to a sufficient depth the 'dolly' is withdrawn and the pile filled up with concrete." The patent does not disclose the preparatory pile of the patents in suit, nor any coffer-dam, and in other respects departs both in apparatus and in process from the subject-matter of those claims. It is true that in the description of patent No. 733,288 it is stated:

"In case the ground is in the nature of quick-sand or such as to preclude the opening from retaining its shape after the pile has been pulled out the casing *11* may be of the full length of the pile and riveted or otherwise firmly fastened to the point and permitted to remain in the opening with said point when the pile is withdrawn," etc.

The description of patent No. 739,268 contains a substantially similar statement. In apparatus conforming to the above statements, however, the pile is driven into the ground not through the instrumen-

tality of a pole or dolly acting directly upon the inside of the shoe or point, as in the patent to French—for there is no such pole or dolly—but through the force of the blows of the monkey upon the head of the pile. But aside from this consideration neither of the patents in suit contains any claim embodying the subject-matter of the above quoted statements, and it is unnecessary to go into any question as to their effect had they been made the foundation of any claim or claims.

Equally irrelevant is the British patent of 1864 to John Potter. No coffer-dam is disclosed. The following statement in the provisional specification sufficiently indicates the inapplicability of that patent to the subject-matter of the claims in suit:

"The tube being driven into the earth (with the point foremost) a sufficient depth, the tube is filled with the composition, the tube being then withdrawn, the loose tip is left in the earth, and the hole as the tube is withdrawn becomes filled with the composition, which being wetted hardens in the usual manner. In certain cases, however, instead of extracting the tube I leave it in the earth," etc.

The United States patent No. 589,026, granted to Alfred A. Raymond in August, 1897, has, so far as I can see, no relevancy whatever to the case under consideration.

The defendant contends that the prior art was such as to negative patentable invention on the part of Shuman, and refers to sundry prior patents and devices, among which are patents relating to the sinking of well-tubes and piles for divers other purposes. But the matters thus disclosed are not sufficient, I think, to overcome the prima facie presumption of validity of the claims in suit arising from the grant of letters patent. The various methods and apparatus are either not in the same art or differ in essential particulars from the apparatus and process of the patents in suit.

On the question of infringement there is a serious contention between counsel. There is no uncertainty as to the character of the alleged infringing apparatus and process or as to their use by the defendant. The defendant has admitted on the record for the purposes of this suit that subsequent to the issue of the letters patent Nos. 733,288 and 739,268, and since the Simplex Foundation Company became the licensee of the Simplex Concrete Piling Company, and within six years prior to the filing of the bill of complaint, it, the defendant, without the license or consent of the complainants, or either of them, used in Philadelphia and elsewhere in the United States the alleged infringing process and apparatus, such apparatus being illustrated in "Exhibit Defendant's Structure." In this structure there was a hollow steel core having a permanently attached steel point closing its lower end, a permanently attached steel head closing its upper end, and a permanently attached external steel band, an outer steel casing sixteen inches in diameter and three-eighths of an inch thick, with reinforcing outer steel bands at the top and bottom respectively on the outer steel casing. The core was smaller in diameter than the interior of the casing, but was a longer pipe than the casing, the enlarged head of the core engaging the top of the casing, and its lower

pointed end projecting below the casing, and in the head of the core there was an oak driving block to receive the driving blows. It is admitted by the defendant that the method of operation pursued in the formation of concrete piles by means of the above-mentioned apparatus and structure was as follows:

"The core was fitted into the casing and both were driven in the ground together to the desired depth for the length of the concrete pile to be formed: the core was then pulled out and wet concrete was dropped into the opening, the core was then used as a rammer, and subsequently the casing was filled to the top with wet concrete, and the casing was then removed slowly and evenly, the concrete falling into position and filling out the thin space formerly occupied by the casing."

In this apparatus used by the defendant the steel casing, indifferently called the "outer steel casing" and the "casing," is a coffer-dam. The hollow steel core with its permanently attached steel point and with its steel head is a preparatory removable pile. The permanently attached steel band around the core a short distance above its point, with the portion of the core below it, together with the steel point, forms or is the equivalent of an enlarged point, and being of slightly less diameter than the interior of the coffer-dam is withdrawn with the core or preparatory pile through the coffer-dam. The apparatus so used by the defendant was, though differing somewhat in form, essentially the same as that of the "Continental System" employed by the Cranford Paving Company, a licensee of the Simplex Concrete Piling Company in 1908 at Continental, Missouri. The apparatus so used at Continental, and the manner in which it was used constitute, I think, an embodiment of the subject-matter of the claims in suit. The defendant's apparatus includes a "removable preparatory pile having a coffer-dam detachably secured thereto in such manner that the two can be driven together and the pile can be afterward withdrawn, leaving the coffer-dam in the opening," as set forth in claim 5 of patent No. 733,288. It also includes a "removable pile having an enlarged point and a casing serving as a coffer-dam," as set forth in claim 9 of the same patent. The enlargement of the point as has already been stated is an enlargment relatively to the diameter of the body of the pile, such enlargement, however, being slightly within the limits of the diameter of the interior of the casing or coffer-dam. The method of using the apparatus complained of includes, "forming a preparatory pile with a coffer-dam around the same, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile, and then filling the hole with concrete and permitting the latter to set" as set forth in claim 1 of patent No. 739,268. It also includes "forming a preparatory pile with an enlarged point and a surrounding coffer-dam, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile and then filling the hole with concrete and permitting the latter to set" as set forth in claim 3 of the same patent. It also includes "forming a preparatory pile with surrounding coffer-dam, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile, then filling the hole with concrete and contemporaneously withdrawing the coffer-dam as the concrete accumulates therein, and then permitting the concrete to set," as set forth in

claim 9 of the same patent. It also includes "forming a preparatory pile with an enlarged point and surrounding coffer-dam, sinking said pile and coffer-dam into position to form a hole, withdrawing the pile, then filling the hole with concrete and contemporaneously withdrawing the coffer-dam as the concrete accumulates therein, and then permitting the concrete to set," as set forth in claim 10 of the same patent. With respect to the question of infringement of claims 9 and 10 of the process patent, it is proper to observe that if the element of "contemporaneously withdrawing the coffer-dam as the concrete accumulates therein, and then permitting the concrete to set" exists as an element in the method practiced in the process conducted by the defendant, the fact that the defendant after the pulling out of the core or pile and the dropping of wet concrete into the opening, uses the core or pile as a rammer, cannot serve to avoid infringement; for the mere addition to the process of such a feature does not so change or qualify it as to make it an essentially different process. By the defendant's admission after the core or pile was used as a rammer "the casing was filled to the top with wet concrete, and the casing was then removed slowly and evenly, the concrete falling into position and filling out the thin space formerly occupied by the casing." This, I think, amounts to "contemporaneously withdrawing the coffer-dam as the concrete accumulates therein, and then permitting the concrete to set" within the fair import of the two claims last above-mentioned. Certainly the concrete in so far as necessary to fill the space theretofore occupied by the thickness of the casing accumulates in that casing contemporaneously with the withdrawing of it, and further, the casing or coffer-dam is withdrawn contemporaneously with the settling of so much of the concrete as is necessary to fill the space caused by such withdrawal. The defendant in forming the "pedestal pile" uses the process and apparatus of the claims in suit, and the fact that it makes an addition by enlarging the base of the pile by "bulging or mushrooming the concrete out into the surrounding earth" cannot shield it from the charge of infringement.

On the whole I have reached the conclusion that the claims in suit of patents Nos. 733,288 and 739,268 are valid and have been infringed by the defendant. An interlocutory decree in accordance with this opinion may be prepared and submitted.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes